UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LORETTA GROSE,

        Plaintiff,

v.                                 Civil Action No. 15-3818

WEST VIRGINIA ALLOYS, INC.,
a Delaware corporation, and
GLOBE METALLURGICAL, INC.,
a Delaware corporation,

        Defendants.

### MEMORANDUM OPINION AND ORDER

        Pending is the motion for summary judgment filed jointly on March 18, 2016, by defendants West Virginia Alloys, Inc., and Globe Metallurgical, Inc. (sometimes, collectively, "the moving defendants").

### I.  Background

        West Virginia Alloys is a Delaware corporation with its principal place of business in Miami, Florida, and Globe Metallurgical is a Delaware corporation with its principal place of business in Beverly, Ohio. Former defendant WVA Manufacturing, LLC ("WVAM"), is a Delaware limited liability company whose constituent members are citizens of Delaware, Michigan, and Florida. WVAM and another former defendant, David Mallow, were recently dismissed from this action on April 21,

2016, by an agreed order of all parties stating that the matters
in dispute between them have been compromised and settled.[1]
Globe Metallurgical owns a 51% interest in WVAM, and is itself
owned by Globe Specialty Metals ("Globe Specialty").

      Plaintiff Loretta Grose ("plaintiff") was formerly
employed as a "head tapper" at an industrial facility in Alloy,
West Virginia owned and operated by WVAM.  Grose Dep. 57:3-6;
Compl. ¶ 1.  Her duties in that capacity included visually
inspecting a molten-silicon furnace situated under fire-brick
flooring.  Grose Dep. 69:3-9; Compl. ¶¶ 9-10.  Plaintiff alleges
that "the fire-brick flooring . . . was in a state of
disrepair[] and [its] integrity . . . was compromised."  Compl.
¶ 11.  She further alleges that she told "company management"
about the disrepair, but that nothing was done about it.  Id. at
¶ 13.  On May 21, 2014, plaintiff was inspecting the furnace
when the fire-brick flooring partially collapsed and plaintiff
fell partway through.  Id. at ¶ 16.  This caused "half her body
[to be] situated over the 2900-3200 [degree] Fahrenheit molten
material" inside the furnace.  Id.  Plaintiff suffered "severe
and permanent injuries" as a result.  Id. at ¶¶ 16-17.  Despite
the implication that plaintiff may have been injured by the

---

1  The agreed order included a reference to the voluntary dismissal
of defendant Mallow, although on December 1, 2015, the court
entered an order granting Mallow's motion to dismiss.

2

molten materials, her injuries apparently consist of a knee sprain accompanied by "complex regional pain syndrome."  <u>See</u> Resp., p. 2.

Plaintiff filed the complaint in this action in the Circuit Court of Fayette County, West Virginia, on February 11, 2015.  It consists of a "deliberate intent" claim under West Virginia Code section 23-4-2(d)(2)(ii) ("Count 1") and a common law negligence claim ("Count 2"), each brought against every defendant.  On March 27, 2015, the defendants removed to federal court.

## II.  <u>Governing standard</u>

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.</u>, 597 F.3d 570, 576 (4th Cir. 2010) (same).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.

The moving party has the initial burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party satisfies this burden, then the non-moving party must set forth specific facts, admissible in evidence, that demonstrate the existence of a genuine issue of material fact for trial. See id. at 322-23; Fed. R. Civ. P. 56(c), (e).

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

## III.  Discussion

As noted, both counts in the complaint are brought against each defendant, including those already dismissed -- WVAM and David Mallow.  In Count 1, plaintiff sets forth her deliberate intent claim that the defendants "intentionally and

knowingly exposed [her] to unsafe working conditions contrary to mandatory state and federal workplace safety regulations." Compl. ¶ 19 (citing W. Va. Code § 23-4-2(d)(2)(ii)).  In Count 2, plaintiff alleges that the defendants "had the duty to control . . . and . . . exercised control over the Alloy[, West Virginia,] facility's operations and equipment, and [therefore] had the duty to provide the [p]laintiff and other employees at the facility with a reasonably safe place to work[.]"  Id. ¶ 23 (citing W. Va. Code § 21-3-1).  Plaintiff claims that the defendants "negligently and carelessly" failed to fulfill that duty.  Id. ¶¶ 24-25.

The remaining defendants -- Globe Metallurgical and West Virginia Alloys -- assert that neither of them employed plaintiff during the relevant period.  Def. Mem., p. 1. Consequently, they conclude, they cannot be held to account under West Virginia Code section 23-4-2 inasmuch as it "provides for a deliberate intent cause of action against an employer only."  Id. at p. 5 (citing Young v. Apogee Coal Co., LLC, 232 W. Va. 554, 564 (2013)).  The defendants further assert that they did not own, operate, or control the Alloy facility during the relevant period.  Id. at p. 1.  Accordingly, they contend that they owed plaintiff no duty of care.  Id. at pp. 5-7.

A.   Count 1 -- "Deliberate intention"

The West Virginia Workers' Compensation Act ("the Act") was designed to provide a simple, expeditious method of resolving disputes arising from workplace injuries.  Mitchell v. State Workmen's Comp. Comm'r, 163 W. Va. 107, 117 (1979); Meadows v. Lewis, 172 W. Va. 457, 469 (1983).  To that end, the Act "remove[s] from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee." W. Va. Code § 23-4-2(d)(1); see also Makarenko v. Scott, 132 W. Va. 430, 440 (1949) ("[T]he right of the injured employee to compensation from the workmen's compensation fund has been substituted in lieu of his cause of action against the negligent employer[.]").  Section 23-2-6 of the Act thus specifically provides that covered employers -- as well as any "officer, manager, agent, representative, or employee" of such employers, see W. Va. Code § 23-2-6a -- are "not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring. . . ."

This immunity is not absolute.  It "may be lost . . . if the employer or person against whom liability is asserted

acted with deliberate intention."[2]  W. Va. Code § 23-4-2(d)(2).

Deliberate intent may be established in either of two "separate

and distinct" ways.  Syl. Pt. 1, <u>Mayles v. Shoney's Inc.</u>, 185 W.

Va. 88 (1990) (referring to W. Va. Code § 23-4-2(d)(2)(i)

(requiring specific intent to injure or result in death) and

(ii) (requiring strong probability of serious injury or death)).

Only the second method is at issue here.  <u>See</u> Compl. ¶ 19

("Defendants violated [section] 23-4-2(d)(2)(ii). . . .").

        In <u>Young v. Apogee Coal Co.</u>, 232 W. Va 554, the West

Virginia Supreme Court of Appeals ruled that "West Virginia Code

[section] 23-4-2(d)(2)(ii) (2005) provides for a 'deliberate

intent' cause of action against an employer only."  <u>Id.</u> at Syl.

Pt. 6.  In the present case, there seems to be no genuine

dispute that the moving defendants, Globe Metallurgical and West

Virginia Alloys, are not "employers" of plaintiff Grose.  The

record indicates instead that plaintiff was employed by former

defendant WVAM rather than by either of the moving defendants.

Grose Dep. 57:3-6, 62:3-7 (indicating that she was hired by WVAM

in 2009).  In her briefing, plaintiff all but concedes this.

_____

2  An employer's workers' compensation immunity may also be lost
if the employer is "in default in the payment of premiums or direct
payments" owed pursuant to the Act. W. Va. Code § 23-2-6.
Plaintiff does not allege, and the record does not disclose, any
facts that would affect immunity on that basis.

See Response, p. 2 ("Plaintiff's direct employer was [WVAM]."). Workers' compensation immunity is therefore not a factor as to Globe Metallurgical or West Virginia Alloys inasmuch as they are not plaintiff's "employers," and plaintiff has presented no basis for a deliberate intent claim as to them.  She may, however, proceed against them in a common law action for negligence, separate from any workers' compensation issues.  See Belcher v. J.H. Fletcher & Co., 498 F. Supp. 629, 631 (S.D. W. Va. 1980) (employee may make statutory claim for benefits against employer as well as common law claim against third party).

### B.   Count 2 -- Negligence

A plaintiff bringing a common law negligence claim must show the following four elements: (1) that the defendant owed the plaintiff some duty of care; (2) that by some act or omission the defendant breached that duty; (3) that the act or omission proximately caused some injury to the plaintiff; and (4) that the plaintiff suffered damages.  Hersh v. E-T Enters. Ltd. P'ship, 232 W. Va. 305, 310 (2013).

West Virginia law imposes a statutory duty of care upon employers and premises-owners, pursuant to which every employer and owner "of a place of employment . . . shall . . . construct, repair and maintain the same as to render it

8

reasonably safe." W. Va. Code § 21-3-1. The determination of whether a defendant owes a particular plaintiff a duty of care is a question of law for the court. Syl. Pt. 5, <u>Aikens v. Debow</u>, 208 W. Va. 486, 490 (2000).

When WVAM was formed, Globe Metallurgical apparently "contributed assets" related to the plant to WVAM, the legal owner, while West Virginia Alloys contributed "all of its net assets." <u>See</u> Pl. Mem. Ex. 1. Being neither plaintiff's employers nor the owners of the workplace in question, the moving defendants contend that they owed plaintiff no duty under West Virginia Code section 21-3-1. <u>See</u> Def. Mem., pp. 4-7.

In most cases, "ownership" of the subject premises is clear and direct. However, it appears that the touchstone of ownership in this context is "control" of the subject premises, reaching farther than purely proprietary "ownership" in the traditional sense. <u>See</u> <u>Henderson</u>, 190 W. Va. at 296 (The "safe work statute does not apply unless the person charged 'has control or custody of the employment, place of employment, or the employee.'") (<u>quoting</u> <u>Carter v. Fraser Constr. Co.</u>, 219 F. Supp. 650, 657 (W.D. Ark. 1963) (applying Arkansas' analogous safe workplace statute)); <u>Pasquale v. Ohio Power Co.</u>, 187 W. Va. 292, 305 (1992) (employer of independent contractor will be liable to such contractor's employee "if he retains some control

or supervision over the work which negligently injures the employee"); see also Taylor v. Sears, Roebuck & Co., 190 W. Va. 160, 163 (1993) (reversing jury verdict against owner where equipment involved in work-related accident upon owner's premises had been furnished by worker's immediate employer, and owner's control over premises was "negligible"); Blake v. Wendy's Int'l, 186 W. Va. 593, 596-97 (1991) (jury question existed as to whether Wendy's exercised control over work of electrician injured when repairing lighting system at franchise restaurant); cf. Hartman v. Becker Constr. Co., Inc., 284 N.W.2d 621, 629 (Wis. 1979) (noting that, under analogous Wisconsin statute, an "owner" is defined as a "person having ownership, control, or custody of any place of employment").

Plaintiff's theory evidently is that Globe Metallurgical, although not the owner of the Alloy facility, nevertheless exercised sufficient control over the premises, particularly in matters of safety and maintenance, to activate the duty established by West Virginia Code section 21-3-1.  See Pl. Mem., p. 2 ("Globe [Metallurgical] and [West Virginia] Alloys . . . controlled and assisted in the operation of the premise[s].").  In support of this theory, plaintiff points to evidence showing that Globe Metallurgical retained a majority stake in WVAM, that Globe Metallurgical employees were

intimately involved in maintenance, safety, and OSHA compliance
matters at the plant, and that WVAM managers were subordinate to
Globe Metallurgical mangers.  See Pl. Resp., pp. 4-8.  Plaintiff
does not claim, and the record does not support a finding, that
Globe Metallurgical or West Virginia Alloys exercised control
over other matters at the facility, such as employment
decisions.

        Upon review of the evidence, the court concludes that
Globe Metallurgical, at least, is not entitled to judgment as a
matter of law on the issue of control over the premises, nor on
the corresponding issue of its duty under section 21-3-1.  The
record is confused and incomplete, but it appears that WVAM
safety managers were not solely responsible for safety matters
at the Alloy plant.  Rather, the record suggests that managers
affiliated with Globe Metallurgical or its parent company, Globe
Specialty, were closely involved in such matters.

        It is undisputed that Globe Metallurgical owns a 51%
interest in WVAM.  See Pl. Resp. Ex. 1 (email from Roger Wagner,
West Virginia Alloys' "corporate director of quality," to safety
regulators); Smith Dep. 62:16-20 ("Alloy is 49 percent owned by
Dow Corning and 51 percent owned by Globe Metallurgical.").
Globe Metallurgical, in turn, is a subsidiary of non-party Globe
Specialty.  See Pl. Resp., Ex. 2.  Steve Pralley, the "plant

11

operations manager" at the Alloy facility, testified that he
"worked for the CEO of Globe Specialty []" and reported to
"Globe" managers.[3]  Pralley Dep. 5:10-12, 8:4-6, 11-15 (Q:  When
you say corporate you mean Globe?  A:  Yes.  Q:  You answer to
management at Globe?  A: Yes.).  Pralley was paid, however, by
WVAM.  Id. at 5:15-16 ("Well, I'm -- I mean, my paycheck and
everything comes from [WVAM].").  Along the same lines, Dustin
Smith, WVAM's "safety engineer," testified that he was
subordinate to Mr. Pralley on-site at the Alloy facility, Smith
Dep. 11:19-12:17, but also reported to Matthew Greene, a safety
manager at Globe Metallurgical.  See id. at 12:2-11 (Q:  [I]s
there someone [off-site to whom you report]?  A:  Matt Greene.
Q:  Tell me about him.  A:  Matt Greene is corporate safety.);
see also Greene Dep. 22:9-11 ("I'm the corporate manager,
[environmental health and safety ("EHS")], for Globe
Metallurgical, Inc.  So, that's my, the entity that I report to,
my company.").

        Mr. Greene is the "highest ranking EHS member with
Globe" Metallurgical.  Greene Dep. 24:11-14.  It appears that
Greene was designated on behalf of Globe Metallurgical to engage

--------

3  It is not clear whether the "Globe" managers Pralley refers to
are affiliated with Globe Specialty exclusively, or also with Globe
Metallurgical, the defendant.  The deposition testimony -- of which
the parties presented only select, disjointed portions -- refers
simply to "Globe."

in safety inspections and compliance assistance with WVAM and
other Globe subsidiaries.  See, e.g., id. at 53:20-23 ("The
[safety] audits [conducted by Greene] are to, are performed to
assist with . . . compliance.  . . .  To make everyone
better.").  Thus, Greene described his relationship with WVAM as
follows:

> [I]f I see a new OSHA standard come out, say the OSHA
> combustible dust in EP, I would certainly make sure that
> they're aware of it.  So I would send an email to them.
> I would also randomly, you know, if they ask me to come
> down to do a safety audit, I would do that or I could
> come in and do one randomly.  If they ask for help on an
> incident investigation, which is not common, but I could
> provide help with that.  Or if they just want to talk to
> somebody about OSHA interpretation of an OSHA standard,
> I could be a resource for that.

Id. at 25:10-20; see also id. at 22:13-16 ("I am a resource and
offer guidance and recommendations to other Globe -- well, other
entities like WVAM[.]").

        The record as a whole intimates substantial, if
unofficial, involvement by Globe Metallurgical, through Greene,
in safety affairs at the Alloy facility.  To wit, later in
Greene's deposition, the following exchange occurred with
counsel for plaintiff:

> Q:  Do you take it upon yourself to perform, like, annual
> audits at various facilities?
>
> A:  I do, yes.

Q:  Okay.  And why do you do that?

A:  To help assist with compliance.

Q:  And why is that important to Globe?

[Objection from counsel for the defendants]

Q:  To assist with compliance.  Why is that an important
function as an EHS manager with Globe?

A:  Well, we don't -- I mean, it's looked at as
important, you know, at all of the entities, every
separate entity.  I mean, it's important everywhere.

Id. at 52:13-53:7; see also id. at 65:5-7 (indicating that
Greene was paid by Globe Metallurgical to conduct inspections of
the Alloy facility); Smith Dep. 27:4-29:14 (discussing annual
audits); Pl. Resp. Ex. 5, p. 1 (email from Dustin Smith to Steve
Pralley announcing impending audit in summer of 2013).  Two
weeks after plaintiff's injury on May 21, 2014, Greene conducted
a "wall-to-wall plant audit" of the Alloy facility on June 4 and
5, 2014.  See Pl. Resp. Ex. 5, p. 2 (summary and report of
Greene's inspection).  The audit report contains dozens of
highly detailed, specific safety and maintenance observations,
each accompanied by a "corrective action" to be taken.  Id.  The
audit makes no mention of the furnace or fire-brick flooring at
issue in this case.  Nonetheless, its thoroughness suggests that
Globe Metallurgical's participation in safety and maintenance at
the Alloy plant went beyond simple "guidance and
recommendations."  Id. at pp. 1-2.  Other evidence of Greene's

direct participation in safety and maintenance oversight at the Alloy facility supports this inference.  See, e.g., Greene Dep. 100:8-10 (indicating that Greene also generates a "monthly safety activity report . . . as a safety sharing practice").

      The court must decide the legal question of whether the moving defendants owed a duty of care to plaintiff Grose. Syl. Pt. 5, Aikens, 208 W. Va. 486.  However, at the summary judgment stage the court cannot weigh the evidence, Russell, 65 F.3d at 1239, nor make determinations of credibility, Sosebee, 797 F.2d at 182.  Instead, plaintiff Grose is entitled to have all inferences that are drawn from the underlying facts viewed in the light most favorable to her.  Diebold, Inc., 369 U.S. at 655.  The regular and detailed auditing and inspection of the Alloy plant by Globe Metallurgical employees, along with the tangled interrelationships among WVAM, Globe Metallurgical, Globe Specialty, and their employees and safety managers, permit the inference that Globe exercised some control over maintenance and safety at the Alloy facility.  Clarification of the relationships among Globe Metallurgical, its parent company, and WVAM, the employment circumstances of various individuals, including Steve Pralley, and the nature and extent of Globe Metallurgical's involvement in safety and maintenance issues at the Alloy facility is required at trial before the court can

objectively rule on the question of Globe Metallurgical's duty
to plaintiff.  Consequently, genuine issues of material fact
remain and the court is presently unable to conclude that Globe
Metallurgical has demonstrated an entitlement to judgment as a
matter of law as to plaintiff's negligence claim.  On the other
hand, inasmuch as the record is devoid of evidence suggesting
that defendant West Virginia Alloys exercised control over the
facility, the court concludes that West Virginia Alloys is
entitled to judgment as a matter of law, and should be
dismissed.

### IV.  Conclusion

For the foregoing reasons, it is ORDERED that the
motion for summary judgment, jointly filed on March 18, 2016, by
defendants West Virginia Alloys, Inc., and Globe Metallurgical,
Inc., be, and it hereby is, granted in favor of West Virginia
Alloys, Inc., and denied as to Globe Metallurgical.

The Clerk is requested to transmit copies of this
order to all counsel of record and any unrepresented parties.

DATED: May 4, 2016

John T. Copenhaver, Jr.
United States District Judge